UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
MT. HAWLEY INSURANCE COMPANY,  :
                                :
    Plaintiff,              :   Case No. 1:19-cv-20409-MGC
                                :
v.                              :
                                :
BRICKELL ON THE RIVER SOUTH TOWER :
CONDOMINIUM ASSOCIATION, INC., and :
MICHAEL LALLA,                  :
                                :
    Defendant.              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HUNTON ANDREWS KURTH LLP
1111 Brickell Ave., Suite 2500
Miami, FL 33131
(305) 810-2500

*Attorneys for Brickell on the River
South Tower Condominium Association, Inc.*

**I.	Introduction**

This is an insurance dispute. Brickell on the River South Tower Condominium Association, Inc. ("Brickell") is a condominium building. Throughout 2017, Mt. Hawley Insurance Company covered Brickell under a Commercial General Liability Policy (the "Policy"). *See* Statement of Material Facts ("SMF") ¶ 1. Among other things, the Policy covers bodily injury claims against Brickell. *See id.* ¶ 2.

During the policy period, an elevator in Brickell's building allegedly malfunctioned and fell several floors before coming to a stop. *See id.* ¶ 5. Michael Lalla, a passenger on the elevator, later sued Brickell for negligence. *See id.* ¶ 6. That claim (the "Lalla claim") remains pending in Florida state court. *See id.* ¶ 7.

Brickell tendered defense of the Lalla claim to Mt. Hawley, who agreed to defend under a reservation of rights. *See id.* ¶ 8. Mt. Hawley then filed this action seeking a declaration that it owes no duty to defend or indemnify. *See* ECF No. 1.

In Mt. Hawley's complaint, and in prior communications with Brickell, Mt. Hawley does not dispute that the Policy's insuring agreement covers Lalla's claim. *See* SMF ¶ 10; ECF No. 1. Instead, it disclaims coverage under two provisions, neither of which apply.

First, Mt. Hawley contends that coverage is barred under the Tenants and Contractors Endorsement (the "Contractors Endorsement"). This endorsement bars coverage for injury arising directly or indirectly from a contractor's work unless Brickell complies with certain conditions. Mt. Hawley contends that the endorsement applies because ThyssenKrupp Elevator Corporation, a contractor, maintains Brickell's elevators under a maintenance agreement. *See generally* ECF No. 1; SMF ¶ 11.

Yet as Judge Marra recently ruled in *Mt. Hawley Ins. Co. v. Roebuck*, 2019 WL 1585024, at *1 (S.D. Fla. Apr. 12, 2019), the Contractors Endorsement only applies when the underlying complaint clearly alleges that the injury arose from a tenant's presence or a contractor's work; not where, as here, the underlying complaint generally alleges that the insured's negligence caused the injury and makes no reference to the work of a contractor. Since the Lalla complaint solely references Brickell and does not clearly allege that Lalla's injuries flow from a contractor's work, the jury might find that Lalla's alleged injuries arose solely from Brickell's actions, not those of its contractor. This creates a potential that the Contractors Endorsement will not apply, and so Mt. Hawley must defend.

Second, Mt. Hawley claims in a waning paragraph at the end of its complaint that Brickell's agreement with ThyssenKrupp violates the Policy's subrogation provision. *See* ECF No. 1 ¶ 58. This argument fails because the subrogation provision only forbids Brickell from interfering with Mt. Hawley's subrogation rights after the loss occurs. Brickell signed the elevator-maintenance agreement well before the loss occurred, and there are no allegations that Brickell committed any post-loss action to thwart Mt. Hawley's subrogation rights. Mt. Hawley thus cannot show that Brickell violated the Policy's subrogation provision.

Finally, because neither of Mt. Hawley's coverage defenses clearly bar coverage, and because the Lalla claim remains pending, the duty to indemnify claim is not ripe and should be dismissed.

For these reasons, the Court should grant summary judgment for Brickell; rule that Mt. Hawley must defend Brickell in the underlying Lalla action; and dismiss the duty to indemnify claim for lack of jurisdiction.

## II. Legal Standard

### A. Motion for Summary Judgment

Summary judgment is warranted if "there is no genuine issue as to any material fact and [Brickell] is entitled to a judgment as a matter of law." *Employers Corp. v. Catrett*, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a). When the non-moving party bears the burden of proof at trial, the moving party can obtain summary judgment by submitting "affirmative evidence that negates an essential element of the non-moving party's claim" or it may show that "the non-moving party's evidence is insufficient to establish an essential element" of the non-moving party's defense. *Id.* Unless the non-moving party can refute this showing with "particular parts of materials in the record" or show "that the materials do not establish the absence or presence of a genuine dispute," the moving party will meet its burden of production. *Carroll v. Carnival Corp.*, 2017 WL 4324818, at *3 (S.D. Fla. July 13, 2017).

### B. Duty to Defend

An insurer's duty to defend is distinct from and broader than an insurer's duty to indemnify. *Trizec Properties, Inc. v. Biltmore Const. Co., Inc.*, 767 F.2d 810, 812 (11th Cir. 1985). The duty to defend arises when the complaint alleges facts that "fairly and potentially bring the suit within policy coverage." *Lawyers Title Ins. Corp. v. JDC (America) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995) (internal citations and quotation marks omitted). In other words, when the complaint alleges facts that potentially bring the suit within the policy coverage, "the insurer is obligated to defend the entire suit." *Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993). "Any doubts regarding the duty to defend must be resolved in favor of the insured." *Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 143 F. Supp. 3d 1283, 1294 (S.D. Fla. 2015) (citation omitted), *aff'd sub nom. Stettin v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 861 F.3d 1335 (11th Cir. 2017).

Under Florida's "eight corners rule," courts analyze an insurer's duty to defend solely from the underlying complaint and the policy. *See Morette Co. v. Southern-Owners Ins. Co.*, 301 F. Supp. 3d 1175, 1182 (N.D. Fla. 2017) (internal citations and quotations omitted). "The actual facts of the situation are not pertinent." *JDC (America) Corp.*, 52 F.3d at 1580 (internal citations and quotation marks omitted). In fact, even "when the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint control in determining the insurer's duty to defend." *Hartford Acc. & Indem. Co. v. Beaver*, 466 F.3d 1289, 1292 (11th Cir. 2006) (citation omitted).

Florida recognizes a narrow exception to this rule, allowing courts to consider extrinsic evidence in "exceptional cases" where the underlying facts are "undisputed, and, had they been pled in the complaint, they clearly would have placed the claims outside the scope of coverage." *See Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1323 (11th Cir. 2014). This is a generally disfavored equitable remedy, only appropriate "when it is manifestly obvious to all involved that the actual facts placed the claims outside the scope of coverage." *Id.* (quoting *First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 F. App'x. 777, 786 (11th Cir. 2008)).

And "when an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation." *Scottsdale Ins. Co. v. Tuckers Lounge Inc.*, 2010 WL 11606308 *1, *2 (S.D. Fla. March 22, 2010) (citing *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1359 (M.D. Fla. 2001)).

### C. Duty to Indemnify

Actual facts, not allegations, drive the duty to indemnify. *See, e.g., Colony Ins. Co. v. Barnes*, 410 F. Supp. 2d 1137, 1143 (N.D. Fla. 2005). As a result, an insurers' duty to indemnify is not ripe "until the insured is in fact held liable in the underlying suit." *Depositors Ins. Co. v.*

5

*BGW Design Ltd., Inc.*, 2018 WL 1830806, at *3 (S.D. Fla. Feb. 28, 2018) (citation omitted), *report and recommendation adopted*, 2018 WL 3672246 (S.D. Fla. May 17, 2018).

"A narrow exception to this rule allows a court to decide the question of indemnity before final resolution of the underlying case if it can conclusively determine from the allegations in the complaint that no coverage exists." *S. Coatings, Inc. v. Century Sur. Co.*, 2008 WL 954178, at *4 (S.D. Fla. Apr. 8, 2008). But it does not apply when "with respect to the duty to defend, the allegations and the supporting record create a potentiality that coverage exists." *Id.*

Because ripeness is a justiciability issue, a federal court has no jurisdiction over an unripe claim. *See, e.g.*, *Mid-Continent Cas. Co. v. G.R. Constr. Management, Inc.*, 278 F. Supp. 3d 1302, 1306 (M.D. Fla. 2017) (dismissing a premature indemnification claim for want of jurisdiction since it was "not ripe as a case of actual controversy"). For this reason, an unripe duty to indemnify claim "is due to be dismissed." *See id.*; *Depositors*, 2018 WL 1830806, at *3 (same); *Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768 (11th Cir. 2019) (recognizing that an unripe duty to indemnify claim is non-justiciable and is correctly dismissed).

**III.    Argument**

Neither of the provisions Mt. Hawley cites in its complaint bar coverage for the Lalla claim. First, as in *Roebuck*, the Lalla complaint does not "solely and entirely" allege that Lalla's injury arose out of a contractor's work; the Lalla complaint instead alleges that <u>Brickell</u>'s acts caused the elevator malfunction. There is a potential, under those allegations, that the jury will find that Lalla's alleged injuries flow from Brickell's acts, not those of its contractor. The endorsement will not apply in that case. Given this potential, Mt. Hawley must defend.

Second, the Policy's subrogation clause only forbids Brickell from interfering with Mt. Hawley's subrogation rights after a loss. And yet the only alleged impairment occurred years before the loss. So the subrogation provision does not bar coverage for the Lalla claim.[1]

Finally, since Mt. Hawley must defend, and since the Lalla claim remains pending, Mt. Hawley's indemnification claim is premature, unripe, and should be dismissed.

### A. The Contractors Endorsement Does Not Bar Coverage, Because There is a Chance That It Will Not Apply.

This Contractors' Endorsement does not absolve Mt. Hawley's duty to defend since there is a chance, on the facts alleged in the Lalla complaint, that Lalla's purported injuries did not arise from ThyssenKrupp's work and solely flowed from Brickell's acts or omissions. *See Roebuck*, 2019 WL 1585024.

The Contractors Endorsement bars coverage for bodily injury arising "directly or indirectly from a commercial tenant's occupation, use or maintenance of any premises leased to such tenant by any insured, such tenant's operations of any kind, or work by a 'contractor'" when the insured fails to comply with certain condition precedents. *See* SMF ¶ 3; ECF No. 1-6 at 29. The Policy defines a "contractor" as "any person or entity that any insured hires or contracts with for the performance of any work for construction, renovations, maintenance." *Id.*

*Roebuck* analyzed this same endorsement. The insured there was a commercial landlord that owned a strip mall. *Id.,* at *9-10. A tenant in the strip mall was a bar called Uncle Mick's. *Id.*, at *10. One night, a bar patron left the bar and found a man beating a woman in the bar's parking lot. *Id.*, at *12. The patron intervened, was stabbed, and sued the bar and the landlord for negligence. *Id.*, at *12-13.

---

[1] The parties do not dispute that the insuring agreement covers the Lalla claim. The only issue is whether an exclusion or condition precludes coverage.

7

The landlord then tendered defense of the suit to Mt. Hawley. *Id.*, at *2. Citing the tenant-specific portion of the same Contractors Endorsement Mt. Hawley cites here, the insurer sought a declaration that the endorsement barred coverage. *Id.*, at *2-3. And much like Mt. Hawley's argument here, the insurer argued that the Contractors Endorsement applied since the injury arose "directly or indirectly" from the bar's occupation or use of the premises. *Id.*, at *16-17. It then disclaimed coverage because the landlord failed to comply with the endorsement's condition precedents. *Id.*

On cross-motions for summary judgment, Judge Marra rejected Mt. Hawley's position—the same one it takes here—ruling that the Contractors Endorsement did not clearly bar coverage for the claim.

To start, the court recognized that the Contractors Endorsement only applies if the underlying injury arose "directly or indirectly" from a tenant's occupation, use or maintenance of the leased property. *Id.*, at *21-22. It then reasoned that the underlying complaint did not "obviously resolve" whether the injury arose from the tenant's occupation, as it merely made "generalized allegations of negligence" against all the defendants, and did not include specific allegations connecting the attack with Uncle Mick's bar. *Id.*, at *23.

Since the complaint did not clearly establish that the Contractors Endorsement would bar coverage, the court next considered whether this was an exceptional circumstance in which it should consider extrinsic evidence. The answer was no. The court noted that, under Florida law, extrinsic evidence is permissible only when it is "manifestly obvious to all involved that the actual facts placed the claims outside the scope of coverage." *Id.*, at *26. Because the parties "hotly dispute[d]" whether the underlying plaintiff's injuries could be reasonably interpreted as arising directly or indirectly from the tenant's presence or a contractor's work, the court refused

to apply the exception. *Id.*, at *22, 26-27. And so because there was a potential that the jury could find that the injury did not arise out of the tenant's presence, the complaint did not solely and entirely allege facts falling within the endorsement. Mt. Hawley thus had a duty to defend.

So too here. As in *Roebuck*, this Contractors Endorsement applies only if the injury "directly or indirectly" arises from a tenant's presence or a contractor's work. *See* SMF ¶ 3. The Lalla complaint does not "obviously resolve" this question, as it only makes "generalized allegations of negligence" against Brickell:

- [Brickell] was the sole owner of the property and had exclusive control over the common elements of the apartment complex, including the elevators. ECF No. 1, Ex. A ¶ 13;

- As the sole owner of the common elements of the apartment complex, including the elevator used by [Lalla], [Brickell] owed a non-delegable legal duty to invitees, including Plaintiff, to maintain the premises in a reasonably safe condition, to warn of any dangers about which it was aware of or should have been aware of, and otherwise exercise ordinary reasonable care. *Id.* ¶ 14;

- [Brickell] breached its non-delegable duty owed to [Lalla] by:

    - a. Negligently installing, assembling, or repairing the elevator, the elevator's electrical systems, or other mechanisms that govern its operation to prevent same from malfunctioning;

    - b. Negligently failing to conduct periodic inspections of the elevator, its electrical systems, and/or other mechanisms that govern its operation to prevent same from malfunctioning;

    - c. Negligently failing to have adequately trained personnel to operate, maintain, and/or inspect the elevator, its electrical systems, and/or other mechanisms that govern its operation to prevent same from malfunctioning;

    - d. Failing to warn the plaintiff of the malfunctioning elevator;

    - e. Failing to shut down the malfunctioning elevator to prevent the public from using the same;

    - f. Violating applicable Florida Building Codes. *Id.* ¶ 15;

- [Brickell's] breach of its duty was the sole and proximate cause of [Lalla's] injuries and damages. *Id.* ¶ 16;

- As a result of Defendant's negligence, Plaintiff has suffered severe and permanent injuries and continues to experience pain and suffering, permanent impairment, loss of capacity for the enjoyment of life, loss of earnings, and lost wage-earning capacity. *Id.* ¶ 17.

As these allegations show, the Lalla complaint doesn't even reference a contractor; it attributes the negligence claim to Brickell's acts alone.

And, as in *Roebuck*, it is far from uncontested that the injury arose from ThyssenKrupp's work. To the contrary, the parties in the underlying case will "hotly dispute" whether ThyssenKrupp or Brickell or either is to blame for the alleged injury. Depending on how the jury resolves that dispute, there is a potential that the jury will find that the injury arose solely from Brickell's acts or omissions, not from the work of ThyssenKrupp. As a result, this is not a case in which it is "manifestly obvious to all involved that the actual facts placed the claims outside the scope of coverage." *Roebuck*, 2019 WL 1585024, at *27. It's exactly the opposite.

In the end, if this endorsement did not apply in *Roebuck*—where there was a strong inference that the bar fight arose from the tenant bar—it does not apply when the underlying plaintiff attributes all the negligence to Brickell and does not even reference the contractor in the complaint. Simply said, Lalla has made broad allegations against Brickell alone, leaving open the possibility that the jury will find that the injury stems solely from Brickell's acts. And since the actual facts and liability of the underlying parties are still in hot dispute, the court should not speculate about what the actual facts will be and should refer only to the complaint and the policy. Because the complaint does not solely and entirely allege facts that fall within the endorsement, Mt. Hawley must defend the Lalla claim.

      **B.**    **Brickell Complied with the Subrogation Provision Because it did not Impair Mt. Hawley's Recovery Rights After the Loss.**

Mt. Hawley claims that Brickell's elevator agreement with ThyssenKrupp (the "Gold's Maintenance Agreement") violates the subrogation provision because Brickell purportedly

10

waived its subrogation rights against ThyssenKrupp in that agreement. ECF No. 1 ¶ 58. This argument fails because any waiver of subrogation occurred before the loss, in compliance with the Policy.

The Policy's subrogation provision provides that if "the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing **after loss** to impair them." *See* ECF No. 1, Ex. D at 16 (emphasis added). Courts nationwide hold that this provision does not bar a pre-loss subrogation waiver. *See, e.g.*, *The Travelers Property & Cas. Ins. Co. v 23rd Street Properties*, 2009 WL 10453388, at *1 (N.Y. Sup. Ct. Apr. 16, 2009) (analyzing this provision and holding that a subrogation waiver was valid "because the CGL policy allows the insured to relinquish its claims prior to the loss"); *Trinity Universal Ins. Co. v. Bill Cox Const., Inc.*, 75 S.W.3d 6 (Tex. App. 2001) (holding that the provision did not bar a pre-loss waiver of subrogation); *Cont'l Cas. Co. v. Homontowski*, 181 Wis. 2d 129, 135 (Ct. App. 1993) (same). S*ee also Dantzler Lumber & Exp. Co. v. Columbia Cas. Co.,* 115 Fla. 541, 553–54 (1934) (noting that an insurer is only entitled to "such rights as the insured" possesses, which an insurer can validly relinquish before the loss).

Brickell signed the Gold's Maintenance Agreement in 2011—well before the loss. *See* SMF ¶ 11. And Mt. Hawley does not allege that Brickell stymied Mt. Hawley's subrogation rights in any other way. Thus, Mt. Hawley cannot establish that Brickell breached the condition.

   **C. Because No Coverage Defense Clearly Applies, and Because the Lalla Claim Remains Pending, the Indemnification Claim is not Ripe.**

A duty to indemnify claim is not ripe until the insured is "in fact held liable in the underlying suit." *Depositors*, 2018 WL 1830806, at *3 (S.D. Fla. Feb. 28, 2018) (granting a motion to dismiss an unripe indemnification claim) (citation omitted), *report and recommendation adopted*, 2018 WL 3672246 (S.D. Fla. May 17, 2018). The sole exception to

this rule is when a court can "conclusively determine from the allegations in the complaint that no coverage exists." *S. Coatings, Inc.*, 2008 WL 954178, at *4. But when there is a potential for coverage, the exception does not apply. *Id.*

Since the Lalla claim remains pending, Brickell is not yet liable in the underlying suit. *See* SMF ¶ 7. And as shown above, neither of Mt. Hawley's coverage defenses clearly apply under the allegations in the complaint, leaving open a potential for coverage. The indemnification claim is therefore unripe, non-justiciable, and "due to be dismissed." *Mid-Continent*, 278 F. Supp. 3d at 1305.

## IV. Conclusion

The duty to defend turns on potentiality. If there is a chance that the policy could cover the alleged claims, the insurer must defend. *See JDC (America) Corp.*, 52 F.3d at 1580 (holding that the duty to defend arises "when the complaint alleges facts that fairly and potentially bring the suit within policy coverage. The actual facts of the situation are not pertinent" (internal citations and quotation marks omitted)). Lalla's complaint broadly attributes his injuries to Brickell's acts, not ThyssenKrupp's. A jury thus could find that Lalla's injuries arose solely from Brickell's acts, leaving the potential that the Contractors Endorsement will not apply.

Along with this, Brickell did not violate the Policy's subrogation provision, as it signed the Gold's Maintenance Agreement well before the loss occurred. And since the Lalla claim remains pending and no coverage defenses clearly apply, the duty to indemnify claim is not ripe for adjudication.

For these reasons, this Court should grant summary judgment for Brickell; rule that Mt. Hawley must defend the Lalla claim; and dismiss the duty to indemnify claim for lack of jurisdiction.

Dated: June 20, 2019

HUNTON ANDREWS KURTH LLP

*/s/ Walter J. Andrews*
Walter J. Andrews (Fla. Bar No. 84863)
David M. Costello (Fla. Bar No. 1004952)
HUNTON ANDREWS KURTH LLP
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
Tel: (305) 810-6407
wandrews@huntonAK.com
dcostello@huntonAK.com
*Attorneys for Brickell on the River South Tower Condominium Association, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 20, 2019 a true and correct copy of DEFENDANT'S MOTION FOR SUMMARY JUDGMENT was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Walter J. Andrews*
HUNTON ANDREWS KURTH LLP