UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
MT. HAWLEY INSURANCE COMPANY,              :
                                           :
    Plaintiff,                             :   Case No. 1:19-cv-20409-MGC
                                           :
v.                                         :
                                           :
BRICKELL ON THE RIVER SOUTH TOWER          :
CONDOMINIUM ASSOCIATION, INC., and         :
MICHAEL LALLA,                             :
                                           :
    Defendant.                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DEFENDANT'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

HUNTON ANDREWS KURTH LLP
1111 Brickell Ave., Suite 2500
Miami, FL 33131
(305) 810-2500

*Attorneys for Brickell on the River
South Tower Condominium Association, Inc.*

I.  **Introduction**

Mt. Hawley's argument is riddled with red herrings, raising points that have nothing to do with the matters in dispute. Despite its attempts to conflate the issues, the question before the Court is narrow and clear: Is there a chance, given the allegations in the Lalla complaint, that a jury could hold Brickell liable for acts unrelated to ThyssenKrupp's work?

The answer is yes. As explained in detail below, each allegation (including those that Mt. Hawley omits from its argument) presents a potential that the jury will find that Brickell's acts, distinct from ThyssenKrupp's, are solely to blame for Lalla's injuries.

Recognizing that the complaint leaves open the potential for coverage, Mt. Hawley moves this Court to look beyond the Lalla complaint and read in a new allegation: That all the negligence alleged against Brickell arises out of ThyssenKrupp's work. Yet Florida courts decide the duty to defend based on the complaint and the policy, period. Only in exceedingly rare circumstances should a court invoke the narrow exception to Florida's eight-corners rule. In fact, courts only do so when there is an uncontroverted fact that would defeat coverage. Here, though, whether Lalla's injuries arise from ThyssenKrupp's work is far from uncontroverted. To the contrary, Brickell and ThyssenKrupp will hotly dispute that issue throughout the Lalla litigation. The Court should thus refuse to step in the shoes of the jury. It should instead analyze the duty to defend based on Lalla's allegations alone. Under those allegations, Mt. Hawley must defend.

*Mt. Hawley Ins. Co. v. Roebuck* presents a perfect example of how the Contractor's Endorsement applies at the duty to defend stage. *See* Case No. 17-cv-80213, ECF No. 87 (S.D. Fla. Apr. 12, 2019).[1] And Mt. Hawley's attempts to distinguish the case miss the mark. Contrary to Mt. Hawley's view, Judge Marra's ruling did not rely on "semantics and a strained interpretation"; it correctly applied the Contractor's Endorsement to a situation much like this one. And though Mt. Hawley belabors that *Roebuck* is not binding on this Court, the Court need not follow *Roebuck* for its precedential weight; the Court should follow *Roebuck* because it was rightly decided.

Finally, Mt. Hawley all but waives its argument that Brickell breached the subrogation provision. Indeed, it concedes that Brickell's case law is correct. And it cites not one case to

---

[1] In this response and in Brickell's summary-judgment motion, Brickell's pincites to *Roebuck* refer to the paging in the docket opinion, which differs from the paging in the Westlaw citation. For ease of reference, Brickell has attached a copy of the docket opinion as Ex. A.

1

support its claim. Instead, it cobbles together an argument that the Contractor's Endorsement somehow combines with the subrogation provision to bar coverage. Yet Mt. Hawley cites no law in support. Nor does it cite any support in the Policy. And, in any event, this argument apparently hinges on whether the Contractor's Endorsement bars a defense. Because it does not, any influence the endorsement has on the subrogation provision is moot.

For these reasons, the Court should deny summary judgment for Mt. Hawley and grant summary judgment for Brickell; rule that Mt. Hawley must defend Brickell in the Lalla action; and dismiss the duty to indemnify claim for lack of jurisdiction.[2]

## II.   Argument

### A.   Mt. Hawley Must Defend, Because There Is A Potential That The Contractor's Endorsement Will Not Apply.

Given the broad allegations in the Lalla complaint, there is a chance that the underlying trial facts will fall outside the Contractor's Endorsement. The endorsement, both sides agree, applies only if the injury "directly or indirectly" arose from ThyssenKrupp's work. *See* ECF No. 34 ("Brickell's Additional Statement of Material Facts" or "ASMF") ¶ 3. Yet the Lalla complaint makes several broad allegations of negligence against Brickell that may have nothing to do with ThyssenKrupp:

- [Brickell] breached its non-delegable duty owed to [Lalla] by:

    o  a. Negligently installing, assembling, or repairing the elevator, the elevator's electrical systems, or other mechanisms that govern its operation to prevent same from malfunctioning;

    o  b. Negligently failing to conduct periodic inspections of the elevator, its electrical systems, and/or other mechanisms that govern its operation to prevent same from malfunctioning;

    o  c. Negligently failing to have adequately trained personnel to operate, maintain, and/or inspect the elevator, its electrical systems, and/or other mechanisms that govern its operation to prevent same from malfunctioning;

    o  d. Failing to warn the plaintiff of the malfunctioning elevator;

---

[2] Mt. Hawley does not dispute that the Court should dismiss the indemnification claim if Mt. Hawley has a duty to defend. *See generally* ECF No. 32. So Brickell will not address this issue and will rest on the points raised in its summary-judgment motion. *See* ECF No. 27 ("Brickell's Mot.") at 11-12.

2

- e. Failing to shut down the malfunctioning elevator to prevent the public from using the same;
- f. Violating applicable Florida Building Codes.

ECF No. 1-3 ¶ 15.

**None** of these allegations reference a contractor; they are "generalized allegations of negligence" against Brickell alone. *See Roebuck*, Ex. A, at *23. And under these "generalized allegations of negligence," the jury could find Brickell liable for acts unconnected to ThyssenKrupp's work.

### 1. Brickell Could Be Liable For Negligent Installation, Assembly, Repair, Inspection, And Operation Of The Elevator System.

Mt. Hawley cherry-picks paragraphs 15(a), 15(b), and 15(c) to argue that the Lalla complaint arises out of ThyssenKrupp's work. *See* ECF No. 32 at 6. But these allegations may bear no connection to ThyssenKrupp's work. For instance, paragraphs 15(a)-(b) allege that Brickell is liable for negligent installation, assembly, repair, and inspection of "the elevator, the elevator's electrical systems, **or other mechanisms** that govern its operation." ECF No. 1-3 ¶ 15(a)-(b) (emphasis added). At this early stage—well before trial—it is unclear what these "other mechanisms" are. In fact, this phrase could be read to allege that a Brickell employee negligently installed, assembled, repaired, or failed to inspect a mechanism—apart from the elevator itself—that influenced the elevator's operation. That theory has nothing to do with ThyssenKrupp's maintenance work.

Some examples make this clear. Say a Brickell employee negligently failed to inspect the building's general electrical system. Or what if a Brickell employee failed to repair a fail-safe switch that stalls operations when the elevator appears to be malfunctioning? Brickell could be liable in both cases. Yet neither example has any connection to ThyssenKrupp's work. And these examples do not exhaust the list of possibilities; they're merely two of an unknowable number of scenarios that could fit within these allegations and also have nothing to do with ThyssenKrupp's maintenance work. Because there is a potential that these scenarios might play out at trial, Mt. Hawley has a duty to defend. *See Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993) (recognizing that when the complaint alleges facts

that potentially bring any part the suit within the policy coverage, "the insurer is obligated to defend the entire suit").

Likewise, Paragraph 15(c) leaves open the potential for a finding against Brickell that is untethered to ThyssenKrupp's work. The allegation claims that Brickell negligently failed to have "adequately trained personnel **to operate** . . . the elevator, its electrical systems, and/or other mechanisms that govern its operation to prevent same from malfunctioning." ECF No. 1-3 ¶ 15(c). This allegation bears no relation to ThyssenKrupp's maintenance of the elevator; it concerns the day-to-day operation of the elevator. Yet neither the Lalla complaint nor the Gold's Maintenance Agreement suggests that ThyssenKrupp "operates" Brickell's elevator on a day-to-day basis. To the contrary, common sense suggests that this is Brickell's role.

What's more, as with paragraphs 15(a)-(b), this allegation claims that Brickell failed to train personnel to operate "other mechanisms" that govern the elevator's operation. Those "other mechanisms," as showcased above, could be a general electrical system, a fail-safe switch, or any number of unknown external mechanisms that hold no connection to ThyssenKrupp's maintenance duties. Given the potential for this liability—liability unrelated to ThyssenKrupp's work—Mt. Hawley must defend.

On top of this, allegations related to the installation, maintenance, repair, and inspection of the elevator itself also trigger Mt. Hawley's duty to defend. This is because nothing in the Gold's Maintenance Agreement gave ThyssenKrupp the exclusive right to perform these acts. In other words, the fact that Brickell delegated some duties to ThyssenKrupp does not foreclose the possibility that Brickell also engaged in some of these activities itself.

Illustrations again make this clear. Imagine if, despite the maintenance contract, on-site maintenance personnel for Brickell made quick repairs to the elevator rather than call ThyssenKrupp for maintenance. This is far from hypothetical: Brickell, a large condominium association governing two towers, no doubt has on-site maintenance on the payroll. But if those actions caused Lalla's injuries, the claim will have nothing to do with ThyssenKrupp's work. And yet that sort of injury could fall within the hazy allegations lodged in paragraph 15(a) of Lalla's complaint.

Or consider this: What if evidence comes out that the elevator had been acting up that day and the jury finds that Brickell's employees thus breached a duty to inspect the elevator

immediately and shut it down. Those actions wouldn't relate to ThyssenKrupp's work. Still, this type of claim could fall within the generalized negligence allegations listed in paragraph 15(b).

Now, if these examples seem premature, that's because they are. And that's the whole point. At this stage, there are key facts still undeveloped in the underlying case, facts that leave open the potential for coverage. Because of this potential, Mt. Hawley cannot prove that the Lalla claim falls "solely and entirely" within the exclusion.[3] And so it must defend. *See Lime Tree*, 980 F.2d at 1405; *see also Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh,* 143 F. Supp. 3d 1283, 1294 (S.D. Fla. 2015) ("Any doubts regarding the duty to defend must be resolved in favor of the insured." (citation omitted)).

Finally, Mt. Hawley's counterargument that all the Lalla allegations relate to the elevator (and therefore to ThyssenKrupp's work) is a nonstarter. It claims that, because Brickell delegated maintenance duties to ThyssenKrupp, Brickell is not in the "business of" installing, assembling, repairing, or inspecting the elevator, its electrical systems, and the mechanisms that govern its operation. *See* ECF No. 32 at 6. Thus, according to Mt. Hawley, any allegations connected to those topics must arise from ThyssenKrupp's work. But Mt. Hawley has no idea whether Brickell (a large condominium association) pays its own on-site maintenance staff to assist with the day-to-day running of the elevator, its electrical systems, and the mechanisms that govern its operation. And the reason Mt. Hawley has no idea is the crux of this case: Those facts have yet to be established in the Lalla action. If they are, and if Lalla's injuries stem from those acts, his claim will have no connection to ThyssenKrupp, and the Contractor's Endorsement will not apply. On that basis, Mt. Hawley must defend.

---

[3] Mt. Hawley argues that Brickell "mischaracterizes" the Contractors Endorsement by arguing that, for the endorsement to apply, Lalla's injuries must arise "solely and entirely" out of a contractor's work. *See* ECF No. 32 at 3. That is not Brickell's argument. Brickell knows that the endorsement applies if the injury arises "directly or indirectly" from a contractor's work. *See* Brickell's Mot. at 7 (citing this standard in the first section of its argument). But Mt. Hawley, as the insurer seeking to bar coverage by arguing that the endorsement applies, must prove that the Lalla complaint alleges facts that "solely and entirely" bring the claim within the endorsement's exclusionary language. *See Scottsdale Ins. Co. v. Tuckers Lounge Inc.*, 2010 WL 11606308, at *1-2 (S.D. Fla. March 22, 2010) ("[W]hen an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation." (internal quotations and citation omitted)). Since the jury might hold Brickell liable on several theories that have nothing to do with ThyssenKrupp, Mt. Hawley cannot prove that the facts "solely and entirely" show that the injuries arise out of ThyssenKrupp's work.

### 2. Several Allegations Presently Have No Arguable Connection To ThyssenKrupp's Work.

Along with this, Mt. Hawley omits several allegations from its argument. *See generally* ECF No. 32 (failing to consider paragraphs 15(d)-(f)). These missing allegations also create the potential that the jury might hold Brickell liable for acts unrelated to ThyssenKrupp's work.

For instance, paragraph 15(d) claims that Brickell failed "to warn the plaintiff of the malfunctioning elevator." This allegation has nothing to do with ThyssenKrupp; the claim is that *Brickell* was negligent for failing to warn Lalla of a dangerous condition. Nor has there been any finding that ThyssenKrupp's actions are to blame for the malfunctioning elevator, so Mt. Hawley can't establish that this allegation bears even a remote connection to ThyssenKrupp's work.

Paragraph 15(e) poses a similar risk of stand-alone liability for Brickell. That allegation claims that Brickell failed to "shut down the malfunctioning elevator to prevent the public from using the same." ECF No. 1-3 ¶ 15(e). Nowhere does the complaint allege that it was ThyssenKrupp's duty to shut down the elevator; the complaint alleges that it was Brickell's duty to shut down the elevator. Nor does the Gold Maintenance Agreement state that ThyssenKrupp has the responsibility to be on-site, 24/7, to shut down a malfunctioning elevator. *See generally* ECF No. 1-5. To the contrary, it says that ThyssenKrupp "will make 6 service visits annually." *Id.* So Brickell's alleged failure has nothing to do with ThyssenKrupp's work. And since there is still no finding that the "malfunction" was ThyssenKrupp's fault, Mt. Hawley cannot even claim an indirect connection.

Rounding out the list, Mt. Hawley faces the same problem with Paragraph 15(f). That paragraph claims that Brickell violated "applicable Florida Building Codes," thus causing Lalla's injury. But which building codes are at issue? The Lalla complaint does not specify which building codes Brickell allegedly violated and, most importantly, whether those codes have anything to do with ThyssenKrupp's maintenance work. So, without knowing the alleged violations, Mt. Hawley cannot prove that all the allegations arise out of ThyssenKrupp's work.

### 3. The Court Should Not Invoke Florida's Narrow Exception To The Eight-Corners Rule, Because The Facts Mt. Hawley Seeks To Introduce Are In Dispute.

Under Florida's "eight corners rule," courts analyze an insurer's duty to defend solely from the underlying complaint and the policy. *See Morette Co. v. So.-Owners Ins. Co.*, 301 F. Supp. 3d 1175, 1182 (N.D. Fla. 2017). The actual facts of the situation are irrelevant. *See*

*Lawyers Title Ins. Corp. v. JDC (Am.) Corp.,* 52 F.3d 1575, 1580 (11th Cir. 1995). In fact, even "when the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint control." *Hartford Acc. & Indem. Co. v. Beaver*, 466 F.3d 1289, 1292 (11th Cir. 2006) (citation omitted).

To be sure, Florida recognizes a narrow exception to this rule, allowing courts to consider extrinsic evidence in "exceptional cases" where the underlying facts are "undisputed, and, had they been pled in the complaint, they clearly would have placed the claims outside the scope of coverage." *See Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1323 (11th Cir. 2014). But this is a generally disfavored equitable remedy, only appropriate "when it is manifestly obvious to all involved that the actual facts placed the claims outside the scope of coverage." *Id*.

The facts that Mt. Hawley asks the Court to read in here do not qualify for the exception. Indeed, Mt. Hawley feigns that the only uncontroverted fact the Court need consider is that Brickell hired ThyssenKrupp to "service and maintain its elevators, conduct periodic inspections and so forth." ECF No. 32 at 7. But that fact is not enough to dodge its duty to defend. As explained above, the jury might hold Brickell liable, under any of the allegations, for acts unrelated to ThyssenKrupp's maintenance. *See supra* 3-7.

In reality, Mt. Hawley asks this Court to read into Lalla's complaint an allegation that all of Brickell's negligence arose from ThyssenKrupp's actions. Yet this "fact" is far from uncontroverted, as Brickell and ThyssenKrupp will "hotly dispute" whose actions are at fault in the underlying case. *See Roebuck*, ECF No. 87, at *22, *26-27 (refusing to consider unpled facts to decide whether the Contractor's Endorsement applied since the parties hotly disputed those unpled facts). This dispute distinguishes this case from the ones listed in Mt. Hawley's brief. *See, e.g.*, *Composite Structures, Inc. v. Cont'l Ins. Co.*, 560 F. App'x. 861, 866 (11th Cir. 2014) (considering an unpled fact **that the insured conceded**); *Nationwide Fire Mut. Fire Ins. Co. v. Keen*, 658 So. 2d 1101 (Fla. DCA 1995) (same); *Underwriters at Lloyds London v. STD Enterprises., Inc.*, 395 F. Supp. 2d 1142 (M.D. Fla. 2005) (same with an undisputed fact).

As a result, there is no basis for the Court to invoke Florida's narrow exception to the eight-corners rule. And even if the Court were to invoke the exception to consider the Gold's Maintenance Agreement, that document, for the reasons said above, still does not dissolve Mt. Hawley's duty to defend. *See supra* 3-7.

### B. *Roebuck* Correctly Interprets The Contractor's Endorsement, And Its Reasoning Applies Here.

As Brickell's motion for summary judgment explains in detail, Judge Marra correctly applied the Contractor's Endorsement in *Roebuck*, and that case's reasoning applies equally here. *See* Brickell's Mot. at 7-10. Even so, Mt. Hawley tries to manufacture reasons for the Court to dismiss *Roebuck*. None of them are persuasive.

First, Mt. Hawley says *Roebuck* is incorrect. It claims Judge Marra's ruling turned on "semantics and a strained interpretation," coming out as it did only because the insured painted the injury as arising from acts unconnected to the tenant bar. Mt. Hawley then closes with stock language from an off-point case about the standard for summary judgment, *see Chartis Prop. & Cas. Co. v. Jassy*, 2013 WL 5921541, at *2 (M.D. Fla. Nov. 4, 2013), apparently arguing that there was no "genuine" dispute in *Roebuck*, and so Judge Marra wrongly decided the case.

Mt. Hawley, not Judge Marra, is wrong here. The court's decision was not mere "semantics" and "strained interpretation": It was a well-reasoned, 28-page opinion, holding that the endorsement did not apply since (a) the complaint made only "generalized allegations of negligence" and did not make specific allegations connecting the injury to the tenant bar, and (b) the parties disputed whether there was any connection to the tenant bar, barring the court from assuming facts outside the complaint. *See* Brickell Mot. 7-10 (describing the case in detail). For these reasons, the court held that Mt. Hawley could not prove that the endorsement would apply. This reasoning rests on settled Florida law. *See, e.g.*, *Scottsdale*, 2010 WL 11606308, at *1-2 (holding that an insurer must prove that the underlying allegations come "solely and entirely" within a provision barring coverage).

Second, Mt. Hawley claims *Roebuck* is distinguishable. The insurer argues that, in *Roebuck*, the court held that it was "not undisputed or obvious" that the underlying plaintiff's injuries were directly or indirectly related to "the tenant's occupation, use or maintenance of the leased property." ECF No. 32 at 5. In contrast here, Mt. Hawley claims, "there is no question that the plaintiff's injuries arose directly or indirectly from a contractor's (ThyssenKrupp) work." *Id.* at 6. But, as explained above, that's not true. *See supra* 3-7. There are a host of questions about whether Lalla's injuries arose from ThyssenKrupp's work—questions that the jury must answer at trial.

8

Last, Mt. Hawley says *Roebuck* is not binding on this Court since it is a trial court decision. True enough. But the Court need not follow *Roebuck* for its precedential value; the Court should follow *Roebuck* because Judge Marra was right. As explained in Brickell's summary-judgment motion and in the pages above, *Roebuck* correctly applies the Contractor's Endorsement, and its reasoning applies equally here. So the Court should rely on *Roebuck* as an example and hold, as Judge Marra did, that Mt. Hawley has a duty to defend.

C. **The Subrogation Provision Does Not Bar Coverage, And Mt. Hawley Presents No Meaningful Argument To The Contrary.**

Mt. Hawley's claim that the Gold's Maintenance Agreement violates the Policy's subrogation waiver is baseless. The subrogation waiver bars post-loss transfers of rights; not pre-loss transfers of rights. *See* Brickell's Mot. 10-11. As Mt. Hawley admits, the common law "upholds an insured's ability to enter into a pre-loss subrogation waiver" under the subrogation provision. *See* ECF No. 32 at 9. Because Brickell executed the maintenance agreement years before Lalla's alleged injury, it complied with the provision. *See* Brickell's Mot. at 11 (collecting cases).

Rather than refute this case law, Mt. Hawley cobbles together an argument that "[o]nly an insurance company could come up with." *Frederking v. Cincinnati Ins. Co.*, 2019 WL 2751700, at *1 (5th Cir. 2019). It seems to say that the subrogation provision and the Contractor's Endorsement work in tandem to bar coverage. *See* ECF No. 32 at 8-9. This is a new argument; far different from Mt. Hawley's complaint allegation that the subrogation provision bars coverage on its own. ECF No. 1 ¶ 58.

At any rate, this claim makes little sense. Mt. Hawley cites no law for its proposition. It cites no Policy provision connecting these two provisions. It fails to explain how they somehow combine to create a phantom exclusion that bars coverage even when the insured complies with the subrogation provision. And even if this conjured coverage bar exists (it doesn't), the argument apparently hinges on the applicability of the Contractor's Endorsement. As explained above, that endorsement does not apply.

Simply put, the Policy is not greater than the sum of its parts. The Contractor's Endorsement does not bar a defense. The subrogation provision does not bar a defense. And since neither blocks coverage alone, they do not block coverage together.

9

**III.   Conclusion**

An insurer's duty to defend is a broad obligation. If the complaint alleges facts that potentially bring any part the suit within the policy coverage, "the insurer is obligated to defend the entire suit." *Lime Tree*, 980 F.2d at 1405. Because Mt. Hawley cannot prove, at this early phase and under a complaint that makes no reference to a contractor, that all of Lalla's allegations arise from ThyssenKrupp's work, there is a potential that the Contractor's Endorsement will not apply. For these reasons, this Court should deny summary judgment for Mt. Hawley and grant summary judgment for Brickell; rule that Mt. Hawley must defend Brickell in the Lalla action; and dismiss the duty to indemnify claim for lack of jurisdiction.

Dated:   July 22, 2019

HUNTON ANDREWS KURTH LLP

*/s/ Walter J. Andrews*
Walter J. Andrews (Fla. Bar No. 84863)
David M. Costello (Fla. Bar No. 1004952)
HUNTON ANDREWS KURTH LLP
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
Tel: (305) 810-6407
wandrews@huntonAK.com
dcostello@huntonAK.com
*Attorneys for Brickell on the River South Tower Condominium Association, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on July 22, 2019 a true and correct copy of DEFENDANT'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Walter J. Andrews*
HUNTON ANDREWS KURTH LLP